J-S49014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: A.M.G., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.S., BIRTH MOTHER | No. 372 WDA 2017 |

Appeal from the Order entered February 6, 2017,
in the Court of Common Pleas of Allegheny County,
Civil Division, at No(s): CP-02-AP-198-2016.

BEFORE: DUBOW, J., SOLANO, J., and FITZGERALD J.[*]

MEMORANDUM BY DUBOW, J.:                          **FILED AUGUST 31, 2017**

L.S. ("Mother") appeals from the order involuntarily terminating her parental rights to A.M.G. ("Child") pursuant to the Adoption Act, 23 Pa.C.S. §§ 2511(a) and (b). We affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

Mother and C.G. ("Father") are the parents of Child, who was born in June 2015. On the day of his birth, Allegheny County Office of Children, Youth, and Families ("Agency") received a referral after Mother admitted to smoking marijuana while pregnant and Mother could not provide an address where she would be living. In addition, the referral alleged concerns about domestic violence, including the fact that Mother and Father were verbally

_____

[*] Former Justice specially assigned to the Superior Court.

arguing at the hospital at the time Child was born. The Agency permitted Child to leave the hospital with Mother once Mother agreed to a safety plan, which required Mother to live with Maternal Grandfather. However, on July 15, 2015, the Agency removed Child from Mother's care after Maternal Grandfather reported that Mother was not returning home at night with Child in violation of the safety plan. At a shelter hearing on August 9, 2015, the Agency placed Child with his current Foster Parents. On August 21, 2015, Mother stipulated to the facts supporting Child's adjudication as dependent.

On November 1, 2016, the Agency filed a Petition to Terminate Mother's Parental Rights ("TPR Petition").[1] The trial court held an evidentiary hearing on February 6, 2017.

At the hearing, the Agency presented testimony that Mother's Family Service Plan goals included: mental health treatment, drug and alcohol treatment, domestic violence classes, appropriate housing, and visitation. Mother failed to complete mental health treatment and drug and alcohol treatment, even though the Agency offered Mother appropriate services. Mother completed domestic violence classes, but the Agency continued to have concerns because Mother continued to live with Father and engage in a romantic relationship with Father. Additionally, in January 2017, there were

---

[1] The Agency also filed a Petition to Terminate Father's Parental Rights. He has not filed an appeal from the trial court's subsequent Order granting the Petition.

two domestic violence incidents between Mother and Father, which resulted in Father's arrest.

The Agency presented testimony that Mother missed over half of her scheduled visits with Child; Mother was entitled to 129 visits but only completed 47 of those visits. Visits have never progressed from supervised to unsupervised due to safety concerns.

The Agency presented testimony from two different caseworkers who testified that termination of parental rights would meet Child's "needs and welfare." N.T., 2/6/17 TPR Hearing, at 39, 70. When both caseworkers were asked the identical question of whether the caseworker had "concern that there might be a bond between [Child] and either of his parents such that termination would be detrimental to him[,]" both caseworkers answered, "No." *Id.* at 39, 70. The caseworkers testified that Child was placed in a pre-adoptive foster home with his biological infant sister and that Foster Parents were meeting Child's educational, psychological, and developmental needs. The caseworkers observed Foster Parents to be loving and attentive towards Child.

Finally, the Agency admitted into evidence psychological reports prepared by Neil D. Rosenblum, Ph.D., in which Dr. Rosenblum evaluated Mother, Child, and Foster Parents. The parties stipulated to the admission of the reports in lieu of Dr. Rosenblum's testimony. Dr. Rosenblum observed that Child has "formed a very strong, primary attachment to his foster parents." Exhibit 4, Psychological Evaluation, 1/10/17, at 8. Dr. Rosenblum

concluded, "[Child] deserves an opportunity to grow up in a safe and supportive environment that is capable of meeting his developmental and emotional needs in [a] secure and predictable fashion" and, therefore, "it would appear to be increasingly likely that a goal change to adoption is consistent with [Child]'s needs and welfare at this time. *Id.*

Mother testified on her own behalf. Mother testified that she wanted to be a part of Child's life and that she believed that terminating parental rights would have a negative effect on Child.

At the conclusion of the hearing, the trial court found that the Agency met its statutory burden pursuant to 23 Pa.C.S. §§ 2511(a)(2), (5), (8) and (b) and terminated Mother's parental rights to Child. Mother timely appealed. Both Mother and the trial court have complied with Pa.R.A.P. 1925.

**ISSUE ON APPEAL**

Mother raises the following issue on appeal: "Did the trial court abuse its discretion and/or err as a matter of law in concluding that [the Agency] met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of [Child] pursuant to 23 Pa.C.S. §2511(b)?" Mother's Brief at 5.[2]

_____

[2] Appellees argue that Mother waived this claim due to defects in her original Brief. However, by Order dated May 31, 2017, we granted her Motion to file an amended Brief and the issue is now properly before us.

**LEGAL ANALYSIS**

We review a trial court's termination of parental rights for an abuse of discretion. *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). This standard of review requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *Id.* (citation omitted). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* We may reverse a decision based on an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* We may not reverse, however, "merely because the record would support a different result." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." *Id.* Moreover, the trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to

enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id.*** (quotation and citation omitted).

**Termination Pursuant to Section 2511(a)**

Mother concedes that the Agency presented sufficient evidence to terminate her parental rights pursuant to 23 Pa.C.S. § 2511(a). ***See*** Mother's Brief at 12. Accordingly, we need only discuss Section 2511(b).

**Termination Pursuant to Section 2511(b)**

We agree with the trial court's determination that the Agency met its burden under 23 Pa.C.S. § 2511(b), and that terminating Mother's parental rights is in the best interest of Child.

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." ***In re Adoption of J.M.***, 991 A.2d 321, 324 (Pa. Super. 2010). Moreover, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). The bond between parent and child must not be viewed solely from the child's viewpoint; rather, a bilateral relationship must exist which emanates from the parent's willingness to parent appropriately. ***In re K.K.R.-S.***, 958 A.2d 529, 534-35 (Pa. Super. 2008).

This Court has emphasized that although a parent's emotional bond with her child is a "major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the trial court when determining what is in the best interest of the child." *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014) (citation omitted). Importantly, "[t]he mere existence of an emotional bond does not preclude the termination of parental rights. Rather, the trial court must examine the status of the bond to determine whether its termination would destroy an existing, necessary and beneficial relationship." *Id.* (citations and quotation marks omitted). Specifically, "[c]ourts must determine whether the trauma caused by breaking that bond is outweighed by the benefit of moving the child toward a permanent home." *T.S.M.*, *supra* at 253.

In the instant case, after listening to the testimony presented and reviewing Dr. Rubenstein's evaluations, the trial court recognized that although Mother and Child have a relationship, it is secondary to Child's primary bond with his Foster Parents. Given this evidence, the trial court concluded that the benefits Child will experience from adoption by Foster Parents outweighed any detriment that Child may experience by severing Mother's parental rights. The trial court opined:

> The uncontroverted testimony established that Child's needs are best met with the Foster Parents. A strong bond exists between the Foster Parents and Child because Child has been living in their home since August 9, 2015. Additionally, Child is placed with his biological sister with whom he is attached. While Child may recognize that []

> Mother is not a stranger, this Court was within its discretion when it determined that bond is secondary and that severing Child's bond with Mother would not cause extreme emotional consequences. The Foster Parents provide Child with much needed stability and permanence at his young age. Therefore, this Court concludes that the developmental, physical and emotional needs and welfare of Child would be best served by terminating Mother's parental rights.

Trial Court Opinion, 4/3/17, at 9. A review of the record supports the trial court's findings.

Mother avers that the trial court erred in concluding that termination of her parental rights is in the best interest of Child. *See* Mother's Brief at 9. Mother first contends that while both caseworkers testified that termination of parental rights would meet the needs and welfare of Child, they both "mentioned the general term of 'permanency' to support their opinion." *Id.* at 12. Mother argues, "there was no evidence proving Mother could not also provide such permanency to [Child]." *Id.* This argument is nonsensical. Mother concedes that the Agency presented sufficient evidence to terminate her parental rights pursuant to 23 Pa.C.S. § 2511(a). *See id.* at 12. By not contesting the trial court's findings regarding Section 2511(a), Mother concedes her inability to parent, and thus her inability to provide Child with permanency. Accordingly, we find no abuse of discretion.

Mother next argues that the trial court should have considered her testimony regarding the emotional effect that termination would have on Child. *See id.* at 14. Mother avers that she testified credibly about her own negative experience in growing up without a mother, and her consequent

- 8 -

belief that termination of parental rights would have a negative effect on Child. *Id.* We cannot disturb the trial court's credibility determinations and find no abuse of discretion. *See In re M.G.*, *supra*.

**CONCLUSION**

In sum, our review of the record supports the trial court's determination that that the Agency met its burden of proving by clear and convincing evidence that Mother's parental rights should be terminated pursuant to 23 Pa.C.S. § 2511(b). Accordingly, we affirm.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/31/2017